# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

NUCOR STEEL-ARKANSAS;  PLAINTIFFS
and NUCOR YAMATO STEEL COMPANY

v.     No. 3:14CV00193 JLH

BIG RIVER STEEL, LLC     DEFENDANT

## OPINION AND ORDER

This is a citizen suit brought under the Clean Air Act seeking an injunction to stop the construction of a steel mill for which the appropriate regulatory authority has issued a construction permit. The question is whether the Clean Air Act authorizes such a suit. It does not.

The antagonists are competitors in the steel industry. Nucor Steel-Arkansas and Nucor Yamato Steel Company are sister entities that operate two steel mills near Blytheville in Mississippi County, Arkansas. Big River Steel holds a final permit issued by the Arkansas Department of Environmental Quality on September 18, 2013, for a steel mill to be constructed near Osceola in Mississippi County, Arkansas. After the Arkansas Department of Environmental Quality issued the final permit, Nucor requested a Commission Review and an Adjudicatory Hearing by the Arkansas Pollution Control and Ecology Commission. Pursuant to that request, an administrative hearing officer conducted a four-day evidentiary hearing and issued a seventy-one-page opinion recommending that the Commission affirm the issuance of the permit. The Commission adopted that recommendation and affirmed the issuance of the permit. Nucor has appealed that decision to the Arkansas Court of Appeals and has also petitioned the Environmental Protection Agency to object to the permit.[1] In addition to those steps, Nucor has commenced this action, seeking

---

[1] The EPA took no action in response to Nucor's petition, so Nucor commenced an action in the District Court for the District of Columbia to compel the EPA to act.

injunctive relief to stop Big River Steel from constructing or continuing to construct the steel mill. Big River Steel has moved to dismiss the complaint.

Prior to 1970, the Clean Air Act was primarily a federal research program for air pollution. *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 278 (3d Cir. 2013). In 1970 Congress amended the Act and charged the Environmental Protection Agency with setting national maximum permissible levels of common pollutants for any given area. *Id.*; *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1011 (8th Cir. 2010). These maximum permissible levels of pollutants are called National Ambient Air Quality Standards or NAAQS. *EME Homer City*, 727 F.3d at 278; *Otter Tail*, 615 F.3d at 1011. The states may assume primary responsibility for deciding how to meet the NAAQS within their borders. *Utility Air Regulatory Group v. Environmental Protection Agency*, 134 S. Ct. 2427, 2435, 189 L. Ed. 2d 372 (2014); *EME Homer City*, 727 F.3d at 278-79. Each state that assumes this responsibility must develop and submit to the EPA a "State Implementation Plan." 42 U.S.C. § 7410. For areas that meet the NAAQS ("attainment" areas), in 1977 Congress enacted the Prevention of Significant Deterioration (PSD) program as Part C of Title I of the Clean Air Act, 42 U.S.C. §§ 7470-79.[2] Pursuant to the PSD provisions of Title I, before constructing or modifying a "major emitting facility" in any area in which the PSD program applies, the operator must obtain a permit from the state regulatory authority (or the EPA if the state has chosen not to take responsibility). 42 U.S.C. § 7475(a).[3] "To qualify for a permit, the facility must not cause or contribute to the violation of any applicable air quality standard, § 7475(a)(3), and it

---

[2] "Nonattainment" areas are subject to different plan requirements. *See* Part D of Title I of the Clean Air Act, 42 U.S.C. §§ 7501-7515.

[3] The term "major emitting facility" is defined in 42 U.S.C. § 7479(1). It is undisputed that the mill to be constructed by Big River Steel will be a major emitting facility.

must comply with emissions limitations that reflect the 'best available control technology' (or BACT) for each pollutant subject to regulation under' the Act." *Utility Air Regulatory Group*, 134 S. Ct. at 2435 (citing 42 U.S.C. § 7475(a)(4)). "Construction permits [under the PSD program] specify the terms and conditions under which emissions units must be constructed and must operate to be in compliance." Clean Air Act Handbook 138 (J. Domine & A. Zacaroli eds., 3d ed. 2011).

In addition to the permit required for facilities within the PSD program, Title V of the Clean Air Act, which was enacted in 1990, "makes it unlawful to *operate* any 'major source,' wherever located, without a comprehensive operating permit." *Utility Air Regulatory Group*, 134 S. Ct. at 2435-36 (citing 42 U.S.C. § 7661a(a)) (emphasis in the original).

> Unlike the PSD program, Title V generally does not impose any substantive pollution-control requirements. Instead, it is designed to facilitate compliance and enforcement by consolidating into a single document all of a facility's obligations under the Act. The permit must include all 'emission limitations and standards' that apply to the source, as well as associated inspection, monitoring, and reporting requirements.

*Id.* (citing 42 U.S.C. § 7661c(a)-(c)).

The Arkansas Department of Environmental Quality administers both of these permit programs in Arkansas. Ark. Code Ann. § 8-4-311(a)(1); APC&EC Reg. 19.101 et seq.; 40 C.F.R. §§ 52.170-52.200. Like a number of states, Arkansas combines the PSD and operating permits into a single permit.

As noted, Nucor contested the issuance of the permit to Big River Steel in an administrative hearing before the Arkansas Pollution Control and Ecology Commission, which hears appeals from permitting decisions of the Arkansas Department of Environmental Quality. Ark. Code Ann. § 8-4-201. And, after that body affirmed the decision of the Arkansas Department of Environmental Quality to grant the permit to Big River Steel, Nucor appealed to the Arkansas Court of Appeals for

judicial review pursuant to Ark. Code Ann. § 8-4-223.[4]

Title V and the PSD provisions of Title I require a state permitting authority to send the EPA a copy of each permit application and each permit proposed to be issued and issued as a final permit. 42 U.S.C. § 7475(d)(1); 42 U.S.C. § 7661d(a)(1)(A) & (B). The EPA has the right to object to the issuance of a permit, and, under Title V, if it does not object, a person may petition the EPA to do so. 42 U.S.C. § 7475(d)(2)(C)(I); 42 U.S.C. § 7661d(b)(1) & (2). Any denial of such a petition is subject to judicial review by the appropriate federal court of appeals under section 7607. *Id*. at (b)(2). Furthermore, the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(2), authorizes the district courts to order the EPA to perform any act or duty that is not discretionary. 42 U.S.C. § 7604(a)(2). Pursuant to that provision, Nucor has commenced an action in the District of Columbia to compel the EPA to grant or deny its petition requesting the EPA to object to the Title V operating permit issued to Big River Steel by the Arkansas Department of Environmental Quality.

Nucor's complaint in this action alleges that the suit arises under the Clean Air Act, 42 U.S.C. § 7401 *et seq*., including the Arkansas State Implementation Plan approved by the EPA pursuant to 42 U.S.C. § 7410 to implement the NAAQS, and the operating permit requirements of Title V of the Clean Air Act, 42 U.S.C. § 7661 *et seq. See* Document #1 at 2 ¶ 4. Nucor alleges that its claims are authorized by section 304(a)(1) and section 304(a)(3) of the Clean Air Act, 42 U.S.C. § 7604(a)(1) & (3). *Id*. at 3 ¶¶ 6-8. Nucor's complaint alleges twenty-seven counts: Counts I through XIII allege that Big River Steel's permit fails to comply with applicable PSD requirements and are as follows:

---

[4] That appeal is pending.

Count I: Failure to conduct pre-construction monitoring for $PM_{2.5}$ at the site of the Big River Steel facility;

Count II: Exclusion of areas based on being below the $PM_{2.5}$ significant impact level after those significant impact levels were vacated;

Count III: Failure to place receptors on public road and at and/or around neighboring facilities;

Count IV: Selection of non-representative background monitor for $PM_{2.5}$;

Count V: Failure to model or otherwise consider secondarily formed $PM_{2.5}$;

Count VI: Failure to include natural gas sources in modeling;

Count VII: Failure to correctly model melt shop and galvanizing line rooftop fugitive emissions;

Count VIII: Failure to consider building conditions and downwash from the Bung, Viskase, and Plum Point Facilities;

Count IX: Failure to properly model fugitive windblown emissions;

Count X: Underestimation of emissions from storage piles;

Count XI: Failure to model at permitted limits;

Count XII: Incomplete design and placement of emissions sources; and

Count XIII: Improper reduction of emissions rates from bunge grain elevator.

Counts XIV through XXI allege that Big River Steel failed to satisfy the Best Available Control Technology (BACT) requirements and are as follows:

Count XIV: Failure to conduct proper top-down BACT analysis;

Count XV: Improper BACT analysis for natural gas fired sources less than 100 MMBTU/hr;

Count XVI: Improper $SO_2$ BACT Analysis for the EAF;

Count XVII: Improper greenhouse gas ("GHG") BACT analysis;

Count XVIII: Improper BACT analysis of fugitive emissions;

    Count XIX: Unsupportable BACT limit for $CO_{2e}$;

    Count XX: Improper VOC BACT analysis; and

    Count XXI: Improper elimination of carbon capture and sequestration ("CCS") as a control technology in greenhouse gas BACT.

Counts XXII through XXVI allege that Big River Steel provided an inadequate application to the Commission and are as follows:

    Count XXII: Failure to provide proper dust control and scrap management plan;

    Count XXIII: Unachievable and undemonstrated emissions rates and emissions factors;

    Count XXIV: Improper emissions factors for EAFs;

    Count XXV: Failing to inform the Arkansas Department of Environmental Quality that its equipment vendor would not guarantee the $PM_{2.5}$ emissions from natural gas combustion equipment when Big River Steel knew that the Arkansas Department of Environment Quality was relying on said guarantees to demonstrate achievability; and

    Count XXVI: Failure to provide adequate additional impacts analysis or alternatives analysis.

Finally, Count XXVII alleges:

    Count XXVII: Failure to have federally enforceable limits for $PM_{2.5}$ because the Arkansas Department of Environmental Quality issued the Prevention of Significant Deterioration permit under Arkansas' State Implementation Plan which the EPA has not approved for regulating $PM_{2.5}$.

    Big River Steel has moved to dismiss the complaint for five reasons: (1) the Clean Air Act does not authorize citizen suits such as this one, which is a collateral attack on an air permit; (2) Nucor lacks Article III standing; (3) Nucor's claims fall outside the zone of interests protected by the Clean Air Act; (4) Nucor's claims are barred by claim and issue preclusion; and (5) the Court should abstain in favor of proceedings before the Arkansas Court of Appeals.  Because the Clean Air Act does not authorize citizen suits such as this one, which collaterally attacks a facially valid

6

state-issued permit, the Court will dismiss Nucor's complaint without addressing Big River Steel's other arguments for dismissal.

The citizen suit provision of the Clean Air Act provides:

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf –

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator, or

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. § 7604(a). Nucor contends that this action is authorized by section 7604(a)(1), which authorizes a citizen suit against any person alleged to be in violation of an emission standard or limitation, and by section 7604(a)(3), which authorizes a citizen suit against any person who proposes to construct or constructs a new major emitting facility without a PSD permit. Big River Steel's motion to dismiss is based on the commonsense observations that it cannot be in violation of an emission standard or limitation because the mill is still under construction and is not operational, so it is not emitting anything; and it cannot be guilty of constructing a major emitting facility without a permit because it has a permit. Nucor responds that the definition of "emission standard or limitation under this chapter" is broad enough to encompass its claims and that, despite

the fact that the Arkansas Department of Environmental Quality issued a permit to Big River Steel, that permit is not "a permit required under part C of subchapter I."

The term "emission standard or limitation under this chapter" is defined as follows:

For purposes of this section, the term "emission standard or limitation under this chapter" means –

(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,

(2) a control or prohibition respecting a motor vehicle fuel or fuel additive, or

(3) any condition or requirement of a permit under part C of subchapter I of this chapter (relating to significant deterioration of air quality) . . . ; or

(4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.[5]

which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

42 U.S.C. § 7604(f).

Nucor's argument that Big River Steel is in violation of an "emission standard or limitation under this chapter" is based on section 7604(f)(3), which defines "emission standard or limitation under this chapter" to include "any condition or requirement of a permit under part C of subchapter I of this chapter (relating to significant deterioration of air quality)." According to Nucor, violations of PSD requirements – such as BACT, modeling demonstrations and air quality analyses – and other SIP requirements vest subject matter jurisdiction in federal court for a citizen claim under Section

---

[5] During oral argument, Nucor conceded that its claims under Title V, which governs operating permits, are not ripe. Document #32 at 46. Accordingly, Nucor's claims under Title V are dismissed without objection.

8

7604(a)(1). Document #22 at 19. Thus, Nucor argues, "[t]his broad definition encompasses the pre-operation failures to comply with the requirements of PSD and the Arkansas SIP as alleged extensively by Nucor." *Id*. Nucor also argued to the Arkansas Pollution Control and Ecology Commission that Big River Steel was not entitled to a PSD permit because it failed to comply with the pre-operation requirements of PSD, including BACT, modeling demonstrations and air quality analyses, as well as other SIP requirements; and those arguments were rejected. In this action, Nucor has again alleged those violations, and it has done so with great specificity.[6] On Nucor's argument, section 7604(a)(1), read in light of section 7604(f)(3), authorizes a citizen suit whenever the state permitting authority erroneously concludes that an applicant has met the requirements for a PSD permit and therefore issues a permit that should not have been issued. That argument is mistaken.

Nucor construes section 7604(f)(3) to include any condition or requirement of *obtaining* a permit under part C, but the word *obtaining* is not in the text. The text defines "an emission standard or limitation under this chapter" to include "any condition or requirement *of a permit* under part C", not any condition or requirement *of obtaining a permit* under part C. Nucor does not allege that Big River Steel is in violation of any condition or requirement of its permit.

Nucor's argument under section 7604(a)(3) is similar to its argument under section 7604(a)(1). Nucor argues:

> In addition, Section 7604(a)(3) provides jurisdiction for actions involving a source that is constructing a facility "without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part

---

[6] In addition to its claims that Big River Steel did not meet the PSD permitting requirements, which were adjudicated in the administrative proceedings, Nucor alleges in Count XXVII that the Big River Steel permit is invalid because the State of Arkansas had not adopted and submitted to the EPA provisions for compliance with the NAAQS for $PM_{2.5}$.

> D of subchapter I of this chapter (relating to nonattainment)." Part C of subchapter I of the CAA ("Part C") imposes eight broad requirements in order to obtain a valid PSD permit. 42 U.S.C. § 7475(a)(1)-(8). Among other things, a valid permit: (1) must be based on supporting materials submitted by the applicant and its agents that properly demonstrate that the source will meet all the requirements of PSD review; (2) must arise from a proper BACT analysis, a proper air quality analysis, and proper NAAQS modeling demonstrations; and (3) must set forth the parameters and emission limitations for all emission sources that will apply to the construction and operation of the proposed facility. 42 U.S.C. § 7475(a). A permit that does not satisfy all of these requirements is not a "permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) . . . ." 42 U.S.C. § 7604(a)(3).

Document #22 at 20. Thus, Nucor argues, even though Arkansas Department of Environmental Quality issued Big River Steel a PSD permit, Big River Steel does not have "a permit required under part C of subchapter I" because, contrary to the findings by the Arkansas Department of Environmental Quality and the Arkansas Pollution Control and Ecology Commission, Big River Steel did not satisfy the requirements stated in 42 U.S.C. § 7475(a). Section 7475(a) provides:

> No major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area to which this part applies unless –
>
> (1) a permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part;
>
> (2) the proposed permit has been subject to a review in accordance with this section, the required analysis has been conducted in accordance with regulations promulgated by the Administrator, and a public hearing has been held with opportunity for interested persons including representatives of the Administrator to appear and submit written or oral presentations on the air quality impact of such source, alternatives thereto, control technology requirements, and other appropriate considerations;
>
> (3) the owner or operator of such facility demonstrates, as required pursuant to section 7410(j) of this title, that emissions from construction or operation of such facility will not cause, or contribute to, air pollution in excess of any (A) maximum allowable increase or maximum allowable concentration for any pollutant in any area to which this part applies more than one time per year, (B) national ambient air quality standard in any air quality control region, or (C) any other applicable emission standard or standard of performance under this chapter;

>       (4) the proposed facility is subject to the best available control technology for each pollutant subject to regulation under this chapter emitted from, or which results from, such facility;
>
>       (5) the provisions of subsection (d) of this section with respect to protection of class I areas have been complied with for such facility;
>
>       (6) there has been an analysis of any air quality impacts projected for the area as a result of growth associated with such facility;
>
>       (7) the person who owns or operates, or proposes to own or operate, a major emitting facility for which a permit is required under this part agrees to conduct such monitoring as may be necessary to determine the effect which emissions from any such facility may have, or is having, on air quality in any area which may be affected by emissions from such source; and
>
>       (8) in the case of a source which proposes to construct in a class III area, emissions from which would cause or contribute to exceeding the maximum allowable increments applicable in a class II area and where no standard under section 7411 of this title has been promulgated subsequent to August 7, 1977, for such source category, the Administrator has approved the determination of best available technology as set forth in the permit.

42 U.S.C. § 7475(a).

On Nucor's argument, 42 U.S.C. § 7604(a)(3) authorizes a citizen suit against any person who proposes to construct or constructs a major emitting facility, even though that person has obtained a permit issued by the appropriate regulatory authority pursuant to part C of chapter I, if the plaintiff alleges that the person to whom the permit was issued nevertheless failed to meet the requirements of section 7475(a)(3)-(8).  The effect of Nucor's argument would be to construe section 7475(a)(3)-(8) as providing requirements that must be met in addition to obtaining the permit, rather than as requirements that must be met in order to obtain the permit.  Such a construction would mean that the parameters in section 7475(a)(3)-(8) "are enforceable independent of the permitting process[,]" an argument that the Eighth Circuit has rejected. *Otter Tail*, 615 F.3d at 1017.

Nucor alleges in its complaint and argues in its brief that Big River Steel's permit is invalid because at the time the permit was issued the State of Arkansas was tardy in updating its State Implementation Plan for purposes of compliance with the NAAQS for $PM_{2.5}$. The deadline for submitting a revision to the plan was July 20, 2012. Arkansas missed that deadline. On May 22, 2014, the EPA issued a final rule stating that the State of Arkansas failed to submit a State Implementation Plan revision to address the $PM_{2.5}$ PSD increments and incrementing regulations by July 20, 2012, as required. 79 Fed. Reg. 29354. Nucor argues that the State's failure to meet the July 20, 2012 deadline for submitting the required revision means that the State of Arkansas could not issue to Big River Steel a federally enforceable PSD permit, so Big River Steel's permit is invalid. Nucor cites no authority, however, holding that the issuance of such a final rule by the EPA means that the State had no authority to issue a federally enforceable PSD permit, nor does the final rule promulgated by the EPA say that.[7] Rather, the final rule says, "this action *only* starts a 24-month 'clock' wherein the EPA must promulgate a Federal Implementation Plan."[8] *Id*. (emphasis added).

Although Nucor disclaims mounting a collateral attack on Big River Steel's permit, its arguments amount to just that – a collateral attack on Big River Steel's permit. The Clean Air Act

---

[7] Nucor cites *Sierra Club v. Franklin Cnty. Power of Ill.*, 546 F.3d 918 (7th Cir. 2008). There, the power company obtained a PSD permit that required construction to begin within eighteen months of its issuance. The power company wanted longer than eighteen months to begin construction. The Seventh Circuit held that section 7604(a)(3) authorized Sierra Club's action to enjoin construction. Although the Seventh Circuit's decision holds that section 7604(a)(3) authorizes suit to enjoin construction by a person who holds an invalid permit, it does not address the issue of whether Big River Steel's permit is invalid.

[8] The State of Arkansas subsequently submitted the required submissions, and the EPA issued a proposed rule in which it proposes to approve the revised Arkansas State Implementation Plan. EPA Proposed Rule FR Doc. 2014-26627.

does not authorize a collateral attack on a facially valid state permit. *United States v. AM General Corp.*, 34 F.3d 472, 475 (7th Cir. 1994); *Goodman v. PA D.E.P.*, Civil Action No. 07-4779, 2008 WL 2682698, at *2 (E.D. Pa. June 30, 2008); *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Authority*, 175 F. Supp. 2d 1071, 1078 (E.D. Tenn. 2001).

The Fifth Circuit rejected an argument similar to Nucor's argument in *CleanCOALition v. TXU Power*, 536 F.3d 469 (5th Cir. 2008). There, the district court construed section 7604(a)(3) as authorizing citizen suits only when an entity proposes to construct or constructs a facility without a permit whatsoever and therefore held that section 7604(a)(3) does not authorize preconstruction citizen suits against facilities that have either obtained a permit or are in the process of doing so. *Id.* at 478-79. The Fifth Circuit agreed with the district court's construction, explaining:

> Appellants interpret the phrase "without a permit" to mean "without a permit that complies with the [Clean Air Act]." However, we decline to rewrite the plain language of the statute. Here, not only has TXU applied for a permit, it has since successfully obtained one, though still subject to state judicial review. Thus, it can hardly be said – as Appellants must in order for section 7604(a)(3) to apply – that TXU is proposing to construct or constructing a facility 'without a permit.'

*Id.* at 479 (footnote omitted). *See also Sugar Loaf Citizens Ass'n v. Montgomery Cnty., Md.*, 33 F.3d 52 n.9 (4th Cir. 1994) (holding that the Clean Air Act citizen suit provisions, 42 U.S.C. § 7604(a)(1) and (a)(3), do not authorize suit against a person who has obtained a permit for the construction of a facility but has not begun emissions). In short, "[c]hallenges to state-issued permits may not be brought in federal court." Clean Air Act Handbook 575.[9]

This is not to say that Nucor has no avenue for redress. In addition to its right to appeal to

---

[9] This statement appears in a chapter devoted to Title V permits, but it is equally applicable to PSD permits. *Cf.* Clean Air Act Handbook 179 ("When administrative appeals [regarding PSD permits] are resolved, the losing party may normally appeal to the state court system for further review.").

13

the Arkansas Court of Appeals,[10] under Title V, as noted above, Nucor has the right to petition the EPA to object to the permit issued to Big River Steel, and it has the right to seek judicial review under 42 U.S.C. § 7607 if the EPA declines to do so. In *Otter Tail*, the Eighth Circuit analyzed the relevant sections of Title V and held that a citizen suit cannot be brought under section 7604(a) for alleged violations of the Title V permitting requirements. *Otter Tail*, 615 F.3d at 1020-22. The Eighth Circuit's analysis relied extensively on *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738 (9th Cir. 2008). In *Romoland*, the Ninth Circuit stated:

> We hold . . . that where a state or local air pollution control district has integrated the preconstruction requirements of Title I with the permitting requirements of Title V and a permit is issued under that integrated system, a claim that the terms of that permit are inconsistent with other requirements of the Clean Air Act may only be brought in accordance with the judicial review procedures authorized by Title V of that Act, 42 U.S.C. § 7661-7661f, and may not be brought in federal district court under the Act's citizen suit provision, 42 U.S.C. § 7604.

*Id*. at 756. As noted above, Arkansas has integrated the Title I and Title V permitting requirements into a single permit, which means, according to the Ninth Circuit, that Title V authorizes judicial review of the entire permit, not simply the portions of the permit that relate to Title V.

In *EME Homer City*, the Third Circuit explained:

> As the Seventh, Eighth, and Ninth Circuits have held, Title V channels challenges to applications and permits into an administrative review process that is reviewable exclusively by the courts of appeals, not collaterally in civil or criminal enforcement actions in the district courts.

*EME Homer City*, 727 F.3d at 296-97 (citing *Otter Tail*, 615 F.3d at 1020; *Romoland*, 548 F.3d at 742-43; *AM Gen. Corp.*, 34 F.3d at 475). After reviewing Title V's statutory provisions, the Third Circuit further explained:

---

[10] The EPA's regulations for state operating permit programs require states to provide an opportunity for judicial review of any final permit in state court. 40 C.F.R. § 70.4(b)(3)(x).

14

> Here, the EPA claims that the Current Owners' Title V permit, though facially valid, is missing applicable PSD requirements and BACT controls. And the EPA (but not the States) claims that the Former Owners' Title V application was incomplete because it omitted those same requirements. But each of these claims "amounts to an allegation that the permit 'is not in compliance with the requirements of'" the Clean Air Act, "claim[s] which could have been pressed through the permitting process."

*EME Homer City*, 724 F.3d at 297-98 (quoting *Otter Tail*, 615 F.3d at 1020). "If the EPA Administrator believed the application or permit was deficient, Title V required her to object during the permitting process." *Id*. (citing 42 U.S.C. § 7661d(b)(1)). Thus, according to the Third Circuit, as well as the Ninth Circuit, a claim that a permit fails to meet PSD requirements and BACT controls is subject to the Title V procedure, which authorizes the EPA to object and which authorizes judicial review of the EPA's decision under section 7607.

At oral argument, Nucor argued that adopting this construction of the Clean Air Act would, in effect, hold that the 1990 amendments to the Clean Air Act, which enacted Title V, repealed by implication section 7604(a)(3), which was added to the citizen suit provision in conjunction with the PSD program as a part of the 1977 amendments. According to Nucor, section 7604(a)(3) authorizes citizen suits alleging that a facially valid PSD permit is invalid because the permitting authority erred in determining that the applicant had met the PSD permit requirements. Therefore, Nucor argues, if Title V requires persons to follow its provisions to obtain judicial review of a PSD permit, Title V effectively repealed section 7604(a)(3). But, for the reasons explained above, Nucor's construction of section 7604(a)(3) is mistaken: section 7604(a)(3) never authorized citizen suits contending that a permitting authority erred in granting a PSD permit. Rather than repealing a provision that permitted citizens to obtain judicial review of PSD permitting decisions, Title V, as construed in *Romoland* and *EME Homer City*, grants to citizens the right to obtain judicial review of permitting decisions, including decisions regarding PSD permits, by authorizing them to petition

15

the EPA to object, and if they disagree with the EPA's decision, to seek judicial review under section 7607.

In short, neither section 7604(a)(1) nor (a)(3) authorizes a collateral attack on a facially valid state-issued permit. Nucor's remedies are those provided in the state and federal statutes as part of the administrative process – appealing the state agency decision to state court (which Nucor has done) and petitioning the federal oversight agency, the EPA, to object to the state agency decision (which Nucor also has done). A federal district court has no supervisory authority over, nor jurisdiction to hear appeals from, a state administrative agency. This Court is without jurisdiction to review the decision of the state agency to grant a PSD permit to Big River Steel.

## CONCLUSION

The citizen suit provision of the Clean Air Act does not authorize suits such as this one, so this Court lacks jurisdiction over Nucor's complaint.[11] Nucor's complaint is therefore dismissed without prejudice.

IT IS SO ORDERED this 25th day of February, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[11] Because the Court lacks subject matter jurisdiction, Big River Steel's request for attorneys' fees pursuant to 42 U.S.C. § 7604(d) must be denied. *Cf. Greater Detroit Res. Recovery Auth. v. The United States Environmental Protection Agency*, 916 F.2d 317, 324 (6th Cir. 1990) (the district court did not have subject matter jurisdiction under the Clean Air Act and was without authority to award attorney's fees under the Equal Access to Justice Act).